UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JABIND BIGLARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-03116-SPM |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[1]**

Plaintiff Jabind Biglari ("Plaintiff") commenced this action on November 19, 2019, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final adverse decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Several relevant Social Security regulations were amended effective March 27, 2017. For purposes of this appeal, the court will use the Code of Federal Regulations ("C.F.R.") in effect at the time that this claim was filed on October 21, 2016. *See* 20 C.F.R. §§ 4040.614, 404.1527, 416.325, 416.927; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q3.

## I.   PROCEDURAL BACKGROUND

On October 21, 2016, Plaintiff applied for a period of disability, DIB, and SSI, alleging that she had been unable to work since September 15, 2016 due to knee problems, back problems, and a heart condition. (Tr. 70, 79, 164, 168). Her applications were initially denied. (Tr. 88-89). On February 15, 2017 Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 95, 97). After a hearing, the ALJ issued an unfavorable decision on December 19, 2018. (Tr. 21). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on January 29, 2019. (Tr. 14-19). The Appeals Council denied the request for review of the ALJ's decision (Tr. 2), and the decision of the ALJ became the final decision of the Commissioner. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (citing 20 C.F.R. § 404.981; *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir. 1988)). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.   FACTUAL BACKGROUND

Plaintiff was 44 years old at the time she filed her DIB and SSI applications and was 46 at the time of the ALJ's decision. (Tr. 32). Plaintiff is a resident of St. Louis, Missouri, and lives together with her children. (Tr. 1, 32). Plaintiff has a sixth-grade education. (Tr. 53). On August 28, 2018, Plaintiff testified at the hearing before the ALJ as follows. Plaintiff experiences pain and numbness caused by a back problem she has had for ten years. (Tr. 56). She is not able to stand for a period of 10 minutes and cannot sit for a period of 20 minutes. (Tr. 56, 59). To alleviate the pain, she uses a walker throughout the day. (Tr. 56, 60). Despite using a walker for her daily activities and taking pain medication every day, Plaintiff experiences varying levels of pain and numbness that travels down both her legs. (Tr. 60). Due to her back pain, Plaintiff is sometimes

unable to stand or perform everyday tasks, and she relies on her son to complete chores such as laundry, washing dishes, and going to the grocery store. (Tr. 61). Plaintiff has been using the walker for one year, but her pain continues to worsen. (Tr. 62). For four years, plaintiff has been taking medication to treat a heart condition which causes chest pain and a racing heart. (Tr. 58). Even with medication, plaintiff experiences a racing heart approximately three times per week. (Tr. 59). Plaintiff's heart condition and treatment prevent her from undergoing surgery to address an ongoing knee condition. (Tr. 56, 59).

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d

605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis

4

proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *see also Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since September 15, 2016, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, and obesity; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 28-31). The ALJ found that plaintiff's residual functional capacity ("RFC") was as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes or scaffolds, and never kneel crouch, or crawl. She can occasionally climb ramps and stairs, and occasionally balance and stoop. She must avoid concentrated exposure to wetness and all exposure to workplace hazards, such as operational control of moving machinery and unprotected heights. The claimant requires a sit/stand option where for 1 minute out of every 30 minutes she can stand, move about, stretch, or change position, but otherwise remain on task.

(Tr. 31). The ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. 39). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that she could perform. (Tr. 40). As such, the ALJ determined that Plaintiff had not been under a disability, as defined by the Act, from September 15, 2016, the alleged onset date, to December 19, 2018, the date of the ALJ's decision. (Tr. 41).

## IV.   DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the ALJ did not properly weight the medical opinion of Dr. Geisman, a treating physician, and because the ALJ's RFC determination is not supported by substantial evidence.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall*, 274 F.3d at 1217). In other words, the court should "disturb the ALJ's decision only if it falls outside the available 'zone of choice.'" *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (quoting *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994)).

## B.  Failure to Properly Weight Dr. Geisman's Medical Opinion

Plaintiff argues that the ALJ incorrectly discounted the opinion evidence of Dr. Geisman. *See* Doc. 15 at 5; Doc. 16 at 2.[2] She avers that, physical examination results and treatment notes support Dr. Geisman's opinion, contrary to the ALJ's findings, that the ALJ appears to have relied only on the normal findings from Plaintiff's medical record in determining her RFC, and that ALJ

---

[2] While Plaintiff initially argued that the ALJ erred in failing to assign a specific weight to Dr. Geisman's opinion, Doc. 12 at 5, the ALJ specifically stated that he assigned "little weight" to the opinions of all of Plaintiff's treating providers, (Tr. 36), and Plaintiff conceded this issue in her reply, Doc. 16 at 2. The court also notes that failure to assign a weight to a treating physician's findings is not, in itself, reversible error. *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014). "An ALJ need only clarify whether it 'discounted a treating physician's findings, and, if it did so, why.'" *Id.* at 1202 (quoting *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008)). *Cf. Goforth v. Berryhill*, 2017 U.S. Dist. LEXIS 70416, at *17 (E.D. Mo. May 9, 2017) (finding the ALJ erred by failing to assign weight to a medical source opinion where the ALJ's RFC finding did not discuss the opinion and did not explain whether she discounted the opinion or why).

both misstated that Dr. Geisman relied on prior MRI results and failed to explain how the MRI findings were inconsistent with Dr. Geisman's opinion. Doc. 12 at 5-8. Furthermore, Plaintiff contends that the ALJ's statement that Plaintiff did not require an assistive device was consistent with Dr. Geisman's findings and that the ALJ mentioned it only to "attempt[] to create an inconsistency where there is none." *Id.* at 7. In particular, the clinical findings Dr. Geisman noted on her medical source statement include abnormal findings that Plaintiff had bony tenderness to palpation in her lumbar spine, paraspinal lumbar tenderness, positive straight leg sign bilaterally, and spinal hypomobility that was worst with flexion or extension. (Tr. 423). While Dr. Geisman's opinion makes no mention of MRI findings, Plaintiff notes that a lumbar spine MRI taken on October 20, 2016 showed disc bulge in several locations, mild bilateral facet arthropathy, and mild bilateral neuroforaminal stenosis, indicating mild degenerative changes in the lumbar spine. (Tr. 304-035). Dr. Geisman's opinion notes that Plaintiff does not require the use of an assistive device. (Tr. 423). Plaintiff argues that the ALJ has therefore impermissibly substituted his own judgment of Dr. Geisman's treating notes in place of Dr. Geisman's own medical judgment. Doc. 12 at 6. Plaintiff also argues that the record evidence from physical examinations and imaging are sufficient to support Dr. Geisman's opinion that Plaintiff is disabled. *See* Doc. 16 at 2-3.

Defendant argues that the ALJ properly assigned little weight to Dr. Geisman's opinion because he clearly explained that Dr. Geisman's opinion was inconsistent with the physical examination, MRI results, and other objective medical evidence. Doc. 15 at 8. Defendant asserts that Plaintiff's treatment records, diagnostic test results, and activities of daily living were inconsistent with her claim of total disability, and that her repeated failure to undertake both prescribed and recommended courses of treatment, together, constitute substantial evidence supporting that ALJ's determination that the Plaintiff's allegations and Doctor Geisman's opinion

8

were not consistent with the record evidence. *See id.* at 5-7. Defendant asserts that Plaintiff's noncompliance with prescribed treatment constituted evidence that is inconsistent with a treating physician's medical opinion. *Id.* at 6. Defendant asserts that the ALJ noted and considered Dr. Geisman's abnormal findings including constant shifting of her physical position during a physical examination, as well as the clinical findings regarding Plaintiff's lumbar spine and leg symptoms, but that the record evidence, constituted of medical opinions by different providers over a period of several months, consistently showed that Plaintiff exhibited normal flexion and extension of her knee and normal strength in her lower extremities in a manner inconsistent with Dr. Geisman's opinion. *See id.* at 5. Defendant further asserts that Plaintiff's daily activities, including caring for two young children and shopping for groceries, is inconsistent with physical disability. *Id.* at 6. Finally, Defendant submits that Plaintiff consistently failed to follow prescribed and recommended treatments, including refusal of knee surgery, failure to refill prescriptions for pain medication, and refusal of injections to relieve her back pain, and that the record of her repeated noncompliance constitutes evidence that Plaintiff's subjective symptoms were inconsistent with the record, and of Dr. Geisman's findings indicating otherwise. *Id.*

A treating physician's opinion is generally given controlling weight, though it is not entitled to it. 20 C.F.R. § 404.1527(c)(2). *See also Grable*, 770 F.3d at 1201 ("A treating physician's opinion is not automatically controlling."); *Smith v. Colvin*, 756 F.3d 621, 625-26 (8th Cir. 2014) ("An ALJ may discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions" (internal citations and quotations omitted)). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." *Ellis v. Barnhart*, 392

F.3d 988, 994 (8th Cir. 2005) (citing 20 C.F.R. § 404.1527(e)(2)). It is well established in the Eighth Circuit that a failure to follow prescribed medical treatment can be considered in determining whether to give a treating physician's opinion controlling weight. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the claimant's symptoms were precipitated by their failure to comply with prescribed treatment) (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008)). Employing the same reasoning, a failure to follow treatment recommendations may also be considered in weighing a treating physician's opinion evidence. *See Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014).

The ALJ reviewed the medical source statement completed by Dr. Geisman in December 2017 and discussed Dr. Geisman's opinion regarding Plaintiff's limitations:

> [Dr. Geisman] opined the claimant can lift and carry less than 10 pounds occasionally, occasionally twist and balance, rarely crouch and crawl, and never climb. He opined the claimant can occasionally reach. He opined the claimant can sit for 10 minutes at one time, 2 hours total, and stand for 20 minutes at one time, and 2 hours total, in an 8-hour workday. He opined the claimant must shift positions at will. He opined the claimant does not require an assistive device and does not need to elevate her legs. Lastly, he opined the claimant would be off-task 25% of the workday, is capable of low stress work, and would be absent more than 4 days per month.

(Tr. 38). The ALJ also reviewed Dr. Geisman's opinion regarding Plaintiff's symptoms, adding that:

> Dr. Geisman noted she has symptoms of pain and stiffness, and signs of bony tenderness to palpation at L3-L4, paraspinal lumbar tenderness worse on the left, positive straight leg raising bilaterally, spinal hypomobility worse with flexion and extension, and no lower extremity weakness or sensory changes. He also noted her pain medications caused nausea and dizziness.

(Tr. 38). Upon review of Dr. Geisman's medical source statement, the ALJ articulated that Dr. Geisman's opinion was not supported by the physical exam and MRI findings cited by Dr. Geisman, or other objective medical evidence:

Although [Plaintiff] has been observed to shift positions frequently during some physical examinations, the undersigned has accommodated this by providing here with a sit/stand option. Otherwise, the claimant has not required an assistive device, and her physical examinations generally showed her gait, lower extremity strength and range of motion were normal. Her treatment records also do not reflect complaints of side effects of her pain medications[.]

(Tr. 38). Considering other record medical evidence in making his RFC determination, the ALJ noted that:

- A physical examination by Corri Payton, NP, in October 2016 showed that Plaintiff had normal strength in her lower extremities and unrestricted range of motion despite other abnormal findings and 10/10 stabbing burning low back pain. (Tr. 33-34).
- A physical examination by Corri Payton, NP, in January 2017 showed that Plaintiff had normal strength in her lower extremities and no lower extremity pain, paresthesia, or focal weakness despite reporting 10/10 low back pain. (Tr. 34).
- A physical examination by Dr. Geisman, in December 2017 showed that Plaintiff had no lower extremity weakness or sensory changes despite reporting 9/10 low back pain. (Tr. 35).
- A physical examination by Adam Lick, MD, in February 2018 showed that Plaintiff has no acute distress, and normal strength in her upper and lower extremities, and normal sensation (Tr. 35).
- A physical examination by Ajitha Kommalapati, MD, in April 2018 showed that Plaintiff had 5/5 strength in hip flexion and knee flexion and extension, 2+ patellar reflexes, absent Achilles tendon reflexes bilaterally, and intact sensation. (Tr. 36).
- A physical examination by Michael Bottros, MD, in April 2018 showed that Plaintiff had 5/5 strength and intact sensation in her upper and lower extremities. (Tr. 36).

The ALJ's review of the record did not reveal any prior references to the use of a walker. (Tr. 33-38). However, the ALJ noted multiple instances when Plaintiff either refused treatment or was not compliant with recommended or prescribed treatment. The ALJ's review of the record showed that Plaintiff refused a recommended surgery for her left knee in September 2016 (Tr. 33, 328), February 2017 (Tr. 34, 501), June 2017, November 2017, December 2017, and February 2018 (Tr. 35-36, 471, 476, 483, 486). Plaintiff declined recommended injections to treat her back pain in January 2017, and November 2017 (Tr. 34, 35, 433, 475, 482). Although treatment records

from April 2018 indicate that Plaintiff initially declined injections but was pursuing them through a pain clinic, there is no record evidence indicating that Plaintiff received injections. (Tr. 466). Plaintiff was noncompliant with prescribed pain medication. (Tr. 35, 469, 476). Accordingly, the ALJ found that Plaintiff had not followed through with physical therapy, had refused to have surgery until after she was awarded disability, had been noncompliant in taking her pain medications, and that there was no evidence she has required a walker or assistive device, or that her heart condition would prevent her from having surgery. (Tr. 37).

Noting that Dr. Geisman's findings were inconsistent with other objective medical evidence, the ALJ based his RFC determination on the record evidence demonstrating that Plaintiff experienced only mild degenerative changes to her lumbar spine, tenderness, decreased range of motion, and occasionally antalgic and slow gait, a conservative treatment history, and Plaintiff's refusal to comply with various courses of physical therapy, injections, or surgery to treat her pain. The ALJ's decision to discount Dr. Geisman's opinion also rested on Plaintiff's noncompliance with recommended and prescribed treatments by numerous medical providers, including a refusal to have knee surgery or receive injections to treat her back pain. It was not outside the zone of choices available to the ALJ to construe Plaintiff's failure to comply with recommended and prescribed treatments as evidence that is inconsistent with Dr. Geisman's opinions regarding Plaintiff's functional limitations. For the foregoing reasons, the ALJ's decision to give little weight to the medical opinion of Dr. Geisman is supported by substantial evidence.

### C.  Whether the RFC was Supported by Substantial Evidence

Plaintiff contends that the ALJ's RFC determination was not supported by medical evidence because the ALJ assigned reduced weight to five treating medical sources, which all opined that Plaintiff should either be excused from work or would have multiple absences at work

per month, and improperly substituted his own inferences from the medical evidence. Doc. 16 at 5. She argues that to the that extent her activities of daily living supported the ALJ's RFC determination, such evidence cannot be the basis for an RFC determination. *Id.*

The Defendant responds that the ALJ's decision reflects that he formulated Plaintiff's RFC based on the record as a whole, including treatment records, diagnostic test results, Plaintiff's activities of daily living, and the medical opinions. Doc. 15 at 9-10. The Defendant argues that the ALJ limited his RFC determination to only the impairments and limitations he found to be consistent with and supported by the record as a whole, including considerations of the medical opinions as well as Plaintiff's activities of daily living. *Id.* As discussed at length in the foregoing section, the ALJ found that the medical record evidence indicated significant inconsistencies in the form of Plaintiff's noncompliance with recommended and prescribed courses of treatment by multiple medical providers over a period of several months. Consequently, the ALJ assigned little or partial weight to the medical opinion of Dr. Geisman, as well as other medical opinions included in the record. (Tr. 36-37). In doing so, the ALJ discounted medical opinion evidence which was not consistent with objective medical findings that Plaintiff had normal upper and lower extremity strength, normal gait, and did not require the use of a walker, but considered Plaintiff's obesity, degenerative disc disease of the lumbar spine, and degenerative joint disease of the bilateral knees. (Tr. 39). The ALJ also considered and rejected medical opinion evidence that Plaintiff required time off-task or to be consistently absent, because the treatment records did not support such findings. (Tr. 38).

In addition to Plaintiff's noncompliance with prescribed and recommended treatment, the ALJ explained that other inconsistencies supported his assignment of little or partial weight to the opinions of record. The opinion of Dr. Borson, given on February 11, 2016, explained that

13

plaintiff's heart condition was dangerous to her health, and that her "work should be changed to limit the amount of stress, exertion, and physical activity as much as is possible." (Tr. 278). However, the ALJ gave little weight to this opinion because he found that Plaintiff's heart conditions did not cause more than minimal limitations in her abilities to do basic work activities and that, in December 2017, she reported that her chest pain and palpitations resolved with the use of medication. (Tr. 36, 475). The opinion of Dr. Yarholar, given on September 16, 2016, states only that Plaintiff "has been under the medical care of Lauren M Yarholar, MD and should remain out of work until cleared in clinic." (Tr. 282). The ALJ gave little weight to this opinion because it did not provide an explanation for her opinion, appeared to be related to a finger injury, and did not appear to be indicative of Plaintiff's overall level of functioning. (Tr. 37). The opinions of Dr. Jin and Dr. Kommalapati both expressed that Plaintiff should be excused from work until her symptoms were better managed by surgery, medications, or further physical therapy. (Tr. 395, 457). The ALJ gave partial weight to those opinions, citing Plaintiff's noncompliance with various treatment options, diagnostic imaging results which showed only mild degenerative changes, and a lack of evidence that Plaintiff needed an assistive device or that her surgery was being delayed due to her heart condition. (Tr. 37).

The Commissioner must assess a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). "[A]lthough medical source opinions are considered in assessing the RFC, the final determination of RFC is left to the Commissioner." *Ellis*, 392 F.3d at 994 (citing 20 C.F.R. § 404.1527(e)(2)). Additionally, the issue of whether Plaintiff is disabled or unable to work is one which is solely assigned to the discretion of the Commissioner. 20 C.F.R. § 404.1527(d)(1).

The ALJ's resulting RFC included a sit/stand option for 1 minute out of every 30 minutes, a restriction from climbing ladders, ropes, or scaffolds, kneeling, crouching, or crawling, and restriction from concentrated exposure to wetness all exposure to workplace hazards. (Tr. 31). While the ALJ gave only partial or little weight to the medical opinions of record due to both internal inconsistency and inconsistency with the record on the whole, the ALJ relied on objective medical evidence from treatment notes and diagnostic tests and considered Plaintiff's activities of daily living in determining Plaintiff's RFC.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of March, 2021.